**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00126-CV**
_____

**SPRING FULTS, Appellant**

**V.**

**MARION LANE STANDLEY, Appellee**

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 21-04-04678-CV**

**OPINION**

Appellant, Spring Fults, appeals from a final judgment awarding her $11,000 for a motor vehicle collision a jury found to have been caused by the negligence and gross negligence of Appellee, Marion Lane Standley. Fults asks us to reverse the judgment and remand this case to the trial court for a new trial, arguing the trial court erred in excluding evidence consisting of her medical records, medical bills, and the deposition testimony of Steven Smith, D.C., and in refusing to include questions in

1

the Court's Charge which would have allowed the jury to award damages for physical pain, mental anguish and impairment in the future.

In his deposition, Dr. Smith had opined that Fults would probably need spinal surgery in the future because the collision had caused three disc herniations in her cervical spine. Standley objected to Dr. Smith's testimony on the basis his opinions were not disclosed in Fults's expert designation and were based on a follow-up MRI which had not been produced before Dr. Smith's deposition, resulting in unfair surprise and prejudice. Standley also objected to all of Fults's medical records and bills on the basis they were not timely produced. The trial court sustained the objections and excluded the records, the bills, and Dr. Smith's deposition testimony. In the absence of evidence of future damages, the trial court then refused to submit jury questions for those elements in the Court's Charge. Because we conclude Fults did not properly disclose this evidence and failed to establish an exception to the rule which results in its automatic exclusion, we affirm.

**Background**

Shortly after Fults and Standley were involved in a motor vehicle collision on May 15, 2019, Fults was taken to Conroe Medical Center, where she was diagnosed with "neck pain." She was advised to rest, use a heating pad, take pain medicine and follow up with a neurosurgeon within two days.

2

Fults sought treatment later that same day at St. Luke's Woodlands Hospital where she was diagnosed with "neck pain" and a left arm abrasion. While at St. Luke's, Fults underwent an MRI on her cervical spine which revealed small diffuse disc bulges at C4-5, C5-6 and C6-7 along with uncovertebral and facet hypertrophy at multiple levels. The radiologist's impressions were, "No MR evidence of acute injury in the cervical spine. Mild degenerative changes as described." She also underwent a CT scan of the cervical spine which revealed, "No acute fracture or subluxation of the cervical spine. No significant degenerative change."

The next day, Fults was seen at Spring Spine Center, where she was diagnosed as having posttraumatic headaches, concussion without loss of consciousness, contusion of the head, sleep disturbance, skin disturbance, muscle spasm (multiple sites), myalgia, cervical segmental dysfunction, cervical sprain/strain, cervical contusion, cervicalgia, cervical radiculitis brachial, cervical radiculitis thoracic, rule out cervical intervertebral disc disorder, thoracic segmental dysfunction, pain in the thoracic region, subscapular neuritis, lumbar and sacroiliac segmental dysfunction, lumbar and lumbosacral sprain/strain, lumbosacral contusion, lumbalgia, contusion of the shoulder and contusion of the elbow. Between May 21 and May 30, 2019, Fults was seen and treated five more times at Spring Spine Center, either by Steven Smith, DC, or by Jacob Navarro, DC.

3

Upon a referral from Spring Spine Center, Fults underwent a cervical spine MRI at Cardinal Imaging on May 31, 2019, revealing a 1.3 mm disc protrusion at C5-6 and a 1.5 mm disc protrusion at C6-7. Between June 3 and June 17, 2019, Fults was treated six more times at Spring Spine Center. Although the handwritten notes from Spring Spine Center appear to document Fults's subjective complaints and objective findings as well as the various modalities of treatment administered to her on each date, the records are devoid of any mental impressions and opinions other than those which may be inferred from Dr. Navarro's decision to continue chiropractic care through June 17, 2019 (her last date of treatment) and to refer her to a pain specialist to evaluate her for a possible epidural steroid injection.

Fults was seen by Ashly Hadlow, APRN, at Horizon Pain Management on June 12, 2019. In Horizon's records, Nurse Practitioner Hadlow opines that Fults was "suffering from symptoms that are likely due to the multiple disc herniations of the spine as seen on the MRI as a result of the trauma sustained at the time of the collision." Hadlow recommended Fults undergo cervical spine epidural steroid injections, but there is no indication Fults did so.

Fults was not seen again until twenty-two months later in April 2021; those records are discussed below. In the meantime, Fults sued Standley but voluntarily dismissed her claims after trial had begun. In summary, the only medical records in existence as of early April 2021 show that within the first month following the

4

accident, Fults had been to two hospitals (both on the day of the accident) where imaging studies revealed mild degenerative disc bulges without acute injuries, after which she had twelve visits with chiropractors, another MRI, and a single visit with a pain specialist who recommended a cervical spine epidural steroid injection which Fults did not undergo.

On April 6, 2021, Fults filed her petition in this case, reasserting the claims she had just nonsuited in the first lawsuit. The following day, April 7, 2021, she was seen at Spring Spine Center for the first time since June 17, 2019. Based on that visit, an April 13, 2021, AMA Evaluation of Impairment was prepared, indicating that Fults's symptoms were "causally related to the [May 15, 2019] accident[,]" that Fults had a 25% whole body impairment rating, and that there was a 76-100% probability that she would require future treatment. On April 15, 2021, Dr. Navarro signed a referral for Fults to see a neurosurgeon, but on May 5, 2021, Dr. Navarro noted that such a referral could not be made until an updated MRI was completed. Fults then underwent an updated cervical spine MRI at The Woodlands Open MRI on May 20, 2021, revealing a 2.5 mm disc herniation at C4-5, an annular tear and a 3 mm disc herniation touching the spinal cord at C5-6, and a 2 mm disc herniation at C6-7.

Pursuant to the trial court's DCO in this case, Fults's deadline to disclose "each expert's name, address, telephone number, the subject of the testimony, and the opinions that will be proffered by each expert" fell on June 4, 2021. Fults filed

Plaintiff's Expert Disclosure on that date, identifying 14 medical professionals, and indicating with respect to each:

> The forgoing health care providers listed in Paragraph (f) (1) above will testify concerning the nature and extent of Plaintiff's injuries, the proximate cause thereof, their examination and treatment of Plaintiff, Plaintiff's prognosis, and the reasonableness and necessity of their medical bills, chiropractic treatments, as well as the amount and necessity of Plaintiff's future medical, chiropractic and treatment expenses and health care costs.

> The foregoing healthcare providers listed in Paragraph (f) (1) above provided Plaintiff with reasonable and necessary medical treatment for injuries and/or damages sustained by Plaintiff. The individuals named herein are not retained experts but they may be called to provide expert testimony regarding the medical treatment Plaintiff received, the medical reasonableness and necessity of that treatment, causation, examinations, findings, the costs of the treatment, the reasonableness and necessity of the costs of Plaintiff's treatment, Plaintiff's medical condition and injuries, Plaintiff's improvement, if any, resulting from the treatment Plaintiff received, Plaintiff's current medical condition, Plaintiff's future medical prognosis, including any possible medical treatment Plaintiff may need in the future, treatment, diagnosis, prognosis, and medical records of Plaintiff, and the cause, extent and effect of the injuries sustained by Plaintiff, and any other issue regarding causation and damages relevant to the incident made the basis of this lawsuit, as well as reasonable and necessary medical expenses and usual and customary fees in the vicinity where medical services were provided to Plaintiff. The mental impressions, opinions, records and reports of these medical experts are contained within each medical expert's medical records of Plaintiff. The records have been reduced to writing and are on file with this Court or will be filed with this Court. Any records reviewed by the medical experts are listed and/or otherwise noted in each expert's records. To the extent, if any, that such medical records do not contain an opinion about the causation of Plaintiff's injuries, these healthcare providers will testify that in their opinion, the collision made the basis of this lawsuit caused the medical conditions for which they treated the Plaintiff and/or aggravated any pre-existing condition(s) to the point that said pre-existing condition(s)

6

became symptomatic when they were asymptomatic before the collision, or became more symptomatic than they were before the collision. Further, these healthcare providers will testify that the collision made their treatment of Plaintiff necessary and that their charges for their treatment of Plaintiff were usual and customary where the services were provided.

The foregoing radiologists will testify concerning their review of Plaintiff's MRIs and will compare and contrast the findings between all MRI studies. The radiologists will testify concerning the cause of Plaintiff's injuries, the progression of Plaintiff's injuries, Plaintiff's prognosis and the likely progression of Plaintiff's injuries over the remainder of Plaintiff's life. These radiologists will testify that, in reasonable medical probability, Plaintiff's injuries were caused by the collision made the basis of this lawsuit, that the injuries have progressed and will continue to progress and get worse and become increasingly symptomatic over the remainder of Plaintiff's lifetime.

In addition, if necessary, these same experts will offer testimony regarding Plaintiff's past, present and future injuries and damages; past, present and future disability, pain and suffering and mental pain and anguish past, present and future accompanying this type of injury, and all information contained in the medical records. Further, these medical experts may testify as to Plaintiff's previous medical condition(s), give their opinions as to their effect, if any, on Plaintiff given the nature of her current condition(s). The opinions and testimony of these medical experts shall be based on their examination and treatment of Plaintiff, as well as on the medical records of Plaintiff which have been produced in this case.

These experts may also offer testimony as to the medical and billing records of Plaintiff. The mental impressions and opinions of the experts are contained within the billing, medical and other types of records relevant to the incident made the basis of this lawsuit, as well as the reasonableness and necessity of those same medical expenses. The records have been reduced to writing and are on file with his Court or will be filed with this Court. They have been produced to counsel for Defendant.

As of June 4, 2021, when Fults's expert designation deadline expired, it is unclear whether either of the parties or their attorneys had copies of the records of Fults's visits at Spring Spine Center in April and May 2021 including the AMA Evaluation of Impairment which contains opinions about causation and future care. In fact, the medical records affidavit accompanying Spring Spine Center's updated records was not signed until June 14, 2021, ten days after Fults's expert designation deadline. What is clear from the record is that neither attorney had a copy of Fults's follow-up MRI at The Woodlands Open MRI on May 20, 2021.

On June 7, 2021, (three days after Fults's deadline to designate experts) Dr. Navarro noted the MRI indicated "multilevel HNP that has worsened @ C5-6 w/ annular tear, C6-7 [and] C4-5 HNP." Dr. Navarro referred Fults to Remi Nader, MD, for a neurosurgical evaluation.

On July 6, 2021, (thirty-two days after Fults's expert designation deadline) Fults saw Josue Guevara, PA-C, in Dr. Nader's office. Guevara diagnosed Fults as having problems in her cervical and lumbar spine, and opined, "Given the mechanism of injury and temporal correlation of symptoms onset following the accident, these injuries are in all reasonable medical probability related to the [May 15, 2019] accident." Guevara recommended physical therapy for the cervical and lumbar spine, medications, facet blocks and trigger point injections in the cervical spine, and an EMG of both upper extremities, but further opined, "Within a

reasonable degree of medical probability, if conservative treatment fails, the patient will likely need ACDF (Anterior Cervical Discectomy and Fusion Surgery) C5-6." This is the first mention of the possibility of spinal surgery in any of the records, and it is unclear when either of the attorneys obtained a copy, but we note the custodian's affidavit accompanying the record was not signed until September 22, 2021, more than three months after Fults's expert designation deadline.

On August 3, 2021, Fults filed a "Notice of Filing Affidavits Pursuant to Rule 902(10) of the Texas Rules of Evidence and §18/001 Et. Seq. of the Texas Civil Practice and Remedies Code[.]" The Notice lists billing record affidavits from ten providers, along with the amount charged by each. Attached to the Notice are copies of all ten billing affidavits along with copies of the billing records. The Notice also lists medical records affidavits from nine providers, but only the affidavits are attached, not the records themselves. Although the Notice indicates the number of pages supplied by each provider, the Notice expressly states the medical records are "not attached."

It is noteworthy that the Notice includes a medical records affidavit from Spring Spine Center, dated January 31, 2020, authenticating 36 pages of records (not attached), whereas at trial Fults offered Plaintiff's Exhibit 13, consisting not only of the January 31, 2020, affidavit along with its 36 pages from 2019, but also a June 14, 2021, affidavit with 40 pages from 2021. It is also noteworthy that the Notice

9

does not include any reference to any affidavits, records or bills from Dr. Nader's office in which Dr. Guevara's causation opinion and surgical recommendation appears.

On September 20, 2021, Fults and Standley filed an Agreed First Motion for Continuance requesting a 90-day continuance and a new Docket Control Order. The only grounds asserted in the motion are that both sides needed additional time to conduct discovery because they were having difficulty scheduling depositions. The motion does not include any information from which the trial court could determine whether either or both sides had been diligent in attempting to complete discovery or take depositions. The motion does not mention any change in Fults's medical condition or symptoms, Fults's medical visits at Spring Spine Center in April and May 2021, the AMA Evaluation of Impairment referencing future medical care, the follow-up MRI in May 2021 which was interpreted as showing progressively worsening disc problems, nor that after Fults's June 4 expert designation deadline Dr. Guevara had recommended future treatment, possibly including spinal surgery. The trial court denied the motion on September 22, 2021, with the notation, "Recognizing that this case is the second iteration of a case which was nonsuited on its third day of trial with a jury in the box, it is far too late to be discussing more discovery and continuing this case." However, the case was not reached for trial in November 2021 and was reset for February 2022.

10

Dr. Smith was deposed on February 1, 2022. Both attorneys would later represent to the court that, before the deposition, they did not have copies of Fults's 2021 medical records, including the 2021 MRI. During his deposition, Dr. Smith opined that Fults's herniated discs at C4-5, C5-6 and C6-7 were due to the May 2019 motor vehicle collision, an opinion not found in the original 36 pages of records from Spring Spine Center from 2019. He further opined that based on the updated MRI in May 2021 (which was previously unavailable to the lawyers), the disc herniations had worsened and were likely to continue to worsen in the future. Based on the AMA Evaluation of Impairment (which was also previously unavailable), Dr. Smith testified Fults had a 25% impairment "related to her cervical disc and radiculopathy, which will likely only be fixed with a fusion one day, which also carries a 25% impairment. Once you fuse those joints in the neck, it's never coming back, its never going to move again." Lastly, Dr. Smith opined that since Fults will probably need spinal surgery, she will also need postsurgical care, ongoing pain management and chiropractic care (another opinion which was not contained in the original sets of records).

The case proceeded to trial thirteen days later, on February 14, 2022. At the conclusion of the first day of trial, and outside the jury's presence, Standley's counsel lodged objections to Dr. Smith's deposition testimony on the grounds Fults had not complied with the expert designation requirements set forth in Rule 195.5 and the

11

trial court's DCO. Standley's counsel asserted he was unfairly surprised and prejudiced because before Dr. Smith's deposition, he had not received copies of any medical records indicating Fults's herniated discs were caused by the collision and worsening with time, asserting a need for future surgery and other medical care, and assessing an impairment rating pursuant to AMA guidelines. According to Standley's counsel, the lack of such records placed him at a disadvantage when cross-examining Dr. Smith during the deposition. In light of these objections, the trial court addressed Fults's counsel as follows:

> THE COURT: … I understand your duties are very different with the treating physician than they are with a retained expert. I've got all of that. But my problem is, I've got an expert who has pivoted on this issue based upon some new MRI that apparently you haven't seen yourself.
>
> [FULTS'S COUNSEL]: True.
>
> THE COURT: And I don't want my jury hearing about what this new MRI shows when nobody has had an opportunity to take a look at it, counter it, think about cross-examination questions regarding it, et cetera, et cetera, et cetera. It is part of the basis of his methodology, and it needs to be part of what's on the table.
>
> [. . .]
>
> So now we've got some MRIs that were conducted after the April -- after the April non-suit, April 2021 non-suit. Those MRIs haven't been produced to anybody except, as I understand it, at the deposition which took place literally 13 days ago, February 1st, 2022.
>
> At this point in time, it feels awfully late. Nobody sought a continuance. Here we all are. I'm really struggling with the idea that we can use the second set of MRIs, the MRIs that were taken after the April 2021 non-suit. So that – I'm struggling with that one, too.

12

If you want to brief it, I'm going to bring y'all in a little earlier than the jury tomorrow morning. We can talk about this more thoroughly. But if you want to brief it and show me why those things come in, I will be happy to -- to discuss with you and to read what you write.

But at this point, I would cut that video where that stuff is taken out, too. Any discussion about the subsequent set of MRIs should be taken out, too. You can have a cut where that stuff is left in, but -- okay? But then that way, you will be prepared either way this ends up going, because the only reason I'm not ruling at this moment is because I want to give you time to brief it, but you can tell where I'm leaning.

After hearing additional arguments regarding the admissibility of Dr. Smith's deposition testimony on the second day of trial, the trial court excluded Dr. Smith's deposition testimony on the basis that Fults's expert designation was "inadequate under Rule 195.5(a)(3)… and the Court's docket control order." Fults subsequently made an offer of proof consisting of "what we would have proffered or given to the jury had the Court not sustained an objection to this witness' entire testimony." Despite the trial court's advice regarding editing the deposition to remove references to the 2021 medical visits, Fults's offer of proof includes testimony that Fults had four visits at Spring Spine Center in 2021, at least one reference to a "newer MRI[,]" and a lengthy discussion of the AMA Evaluation of Impairment performed in 2021.

The trial court also sustained Standley's objections to Fults's medical records and bills on the basis they had not been timely produced. After both sides rested, the case was submitted to the jury. Because Standley stipulated that his negligence proximately caused the collision, the first question asked the jury to find the amount

13

that would fairly and reasonably compensate Fults for her damages, in answer to which the jury found $500 for physical pain and mental anguish in the past and $500 for impairment in the past. Based on the trial court's rulings, the charge did not include damage elements for future physical pain, mental anguish or impairment. The jury unanimously found Standley to have been grossly negligent and assessed exemplary damages in the amount of $10,000. The trial court entered judgment based on the verdict, and Fults appealed.

## Analysis

Fults's first issue on appeal argues the trial court erred in excluding Dr. Smith's deposition testimony. With respect to non-retained experts, Texas Rule of Civil Procedure 195.5(a)(3) requires a party to disclose either "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or… documents reflecting such information[.]" Tex. R. Civ. P. 195.5(a)(3). "The purpose of this pretrial disclosure rule is to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Miller v. Kennedy & Minshew*, 142 S.W.3d 325, 348 (Tex. App.—Fort Worth 2003, pet. denied). "Recognizing the importance of full discovery of the mental impressions and opinions of experts prior to trial, this court refuses to condone 'offensive and unacceptable use of discovery mechanisms [to conceal expert information] intended to defeat the salutary objective of discovery.'"

14

*Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 305 (Tex. 1993) (quoting

*Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 560 (Tex. 1990, orig. proceeding)).

Rather than disclosing each treating physician's impressions and opinions, Fults provided what appears to be an attempted one-size-fits-all expert designation so amorphous that it could be used in arguing for the admission of virtually any opinion regarding any medical condition in any given case. Although quite lengthy, Fults's designation does not disclose the mental impressions or opinions that were actually held by any of the experts, nor does it disclose any of the bases for any such opinions. As the trial court correctly noted, the designation indicates the treating physicians may testify that the collision in question: (1) may have caused the condition (or conditions) in question; (2) may have caused a condition which was (or conditions which were) asymptomatic to become symptomatic; or (3) may have made the symptoms of a condition (or conditions) worse than they were before the collision. The designation does not indicate which of the three potentially held opinions is the one actually held by any of the experts. The trial court also correctly noted that, contrary to Rule 195.5, the designation does not state the factual bases for any opinion.

While Fults's expert designation may have been sufficient if coupled with the production of documents containing the information required by Rule 195.5(a)(3), any potential sufficiency of the designation collapses without the production of such

15

medical records, because the designation expressly relies on what is contained in the records as part of the disclosure of the expert's opinions. Fults's response indicates:

> The mental impressions, opinions, records and reports of these medical experts are *contained within each medical expert's medical records* of Plaintiff…To the extent, if any, that such medical records do not contain an opinion about the causation of Plaintiff's injuries, these healthcare providers will testify that in their opinion, the collision made the basis of this lawsuit caused *the medical conditions for which they treated the Plaintiff* and/or aggravated any pre-existing condition(s) to the point that said pre-existing condition(s) became symptomatic when they were asymptomatic before the collision, or became more symptomatic than they were before the collision. (Emphasis added).

Without the records, there is no way to know the condition(s) for which Fults was treated by Dr. Smith and, therefore, no way to know what condition(s) Dr. Smith would opine was, or were, caused, triggered, or aggravated by the collision in question. But even though the designation, by itself, does not adequately disclose Dr. Smith's opinions, Fults could have complied with Rule 195.3(a)(3) by producing medical records containing the general substance of Dr. Smith's opinions and the factual basis for those opinions. The question is whether she did.

During trial and outside the jury's presence, Standley's counsel asserted he had not received copies of Fults's medical records, not even when Fults filed her August 3 Notice of Filing Affidavits, because the records themselves were not

16

attached to the affidavits that were served with that notice.[1] Fults's counsel responded by asserting the records were served "years ago in the first case." There was also a discussion about some medical records affidavits having been filed under the first cause number after it had been dismissed and during the time when the second case was pending. Those records were never identified. Despite an overnight opportunity to gather and provide the court proof of which records had been produced when, no such proof was offered when the issue was taken up again the second day of trial. Although the colloquy with the court implies counsel for both sides agreed that some records were produced during the first lawsuit or under the first cause number during the second lawsuit, neither side identified which records were included in any such production.

Importantly for our analysis, nothing in the record shows the first set of records from Spring Spine Center was ever produced in either lawsuit on or before Fults's June 4, 2021, expert designation which relies on the medical records as disclosing the treating physicians' opinions. As for the second set of records from Spring Spine Center (which contain opinions about causation and future nonsurgical

---

[1]Fults's August 3, 2021, Notice of Filing Affidavits, although timely for purposes of Texas Rule of Evidence 902(10), could not constitute timely disclosure of Dr. Smith's opinions according to the DCO's June 4 expert designation deadline. Moreover, the Certificate of Service contained in the Notice establishes only that Standley's counsel was served a copy of the custodian's affidavit; the Notice expressly states the medical records themselves were "not attached[.]"

medical treatment), it is perhaps even less likely that they were produced by June 4 because the custodian's affidavit was not signed until ten days later. Lastly, it is impossible that Dr. Guevara's surgical opinion was produced by June 4 because Fults did not see him until July 6. In light of the attorneys' competing representations about production or nonproduction of records the issue was one for the trial court to resolve. To the extent the trial court's ruling excluding Dr. Smith's deposition implies a finding that neither set of records from Spring Spine Center was timely produced, we may not set that finding aside in the absence of an abuse of discretion since the trial court was in the best position to make the determination based on firsthand assessments of credibility. *See Hoa Dao v. Md. Cas. Co.*, No. 09-13-00353-CV, 2015 Tex. App. LEXIS 4893, at *19 (Tex. App.—Beaumont May 14, 2015, no pet.) (mem. op.). Without specific information showing what medical records were produced at what time, we cannot say the trial court abused its discretion in deciding Spring Spine Center's records had not been timely and properly produced as a method of disclosing the general substance of Dr. Smith's opinions and the bases therefor.

Texas Rule of Civil Procedure 193.6(a) provides for the automatic exclusion of information that is not timely disclosed in discovery unless the proffering party establishes the applicability of an exception:

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed,

18

or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1)     there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2)     the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P. 193.6(a). Fults does not argue on appeal that either exception applies. That said, even if we were to construe Fults's first issue on appeal as fairly including an argument that an exception applies, we conclude the record does not establish either exception. The burden of establishing an exception rests on the party seeking to introduce the evidence, and such a finding must be supported by the record. *See id.* 193.6(b). We review a trial court's Rule 193.6(a) decision for abuse of discretion. *See Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023); *Big Wheel Dev., Inc. v. Orange Cnty. Bldg. Materials, Inc.*, No. 09-07-00381 CV, 2008 Tex. App. LEXIS 4726, at *5-6 (Tex. App.—Beaumont June 26, 2008, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In the trial court, Fults never asserted good cause under Rule 193.6(a)(1), and she attempted to negate unfair surprise or prejudice under Rule 193.6(a)(2) only by arguing that she had fully complied with the rules by producing the records on

19

August 3, 2021, stating, "[T]hat's where the mental impressions of the experts are contained. They have been given fair notice of that. So there is no way that they can possibly be unfairly surprised or unfairly prejudiced." But as indicated above, the trial court was within its discretion to determine whether the records were produced, and we defer to the trial court's implied finding. *See Jackson*, 675 S.W.3d at 6 (trial court may credit counsel's statements in open court as support for determination about the state of discovery in the case). Moreover, even if any records were produced on August 3 as Fults claimed, the trial court may have reasonably concluded such production was insufficient to negate unfair surprise or prejudice since the deadline for disclosing experts' opinions expired two months earlier, on June 4, and Dr. Smith's opinions were based on an MRI which Fults's counsel conceded was not produced until the day of Dr. Smith's deposition.

"Courts should not interpret the Rules of Civil Procedure in a manner that allows for trial by ambush." *In re Bestway Oilfield*, No. 09-21-00204-CV, 2022 Tex. App. LEXIS 6638, at *8 (Tex. App.—Beaumont Aug. 31, 2022, no pet.) (orig. proceeding). In *In re Bestway*, Bestway was denied leave to designate a rebuttal expert and to re-depose Sentry's expert even though the expert's notes were not produced until after the deposition. *Id*. We conditionally granted mandamus relief, holding the trial court abused its discretion by "allow[ing] 'surprise expert testimony' and 'manipulative conduct designed to thwart the expert disclosure and

discovery process,' without giving Bestway the right to properly investigate or depose the expert." *Id.* (quoting *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011)).

Here, the trial court excluded surprise expert testimony after concluding that Fults's expert designations were inadequate to disclose the expert's opinions along with the factual bases for his opinions, and implicitly finding that Standley's counsel was not provided copies of records containing the expert's opinions nor an MRI upon which the expert relied in reaching his opinions. Even assuming Standley's counsel previously received copies of all the medical records in existence during the first lawsuit, nothing in the record indicates Standley's counsel was aware, going into the deposition, that Fults had been seen by any medical provider since June 2019, certainly not that she had undergone a new MRI which showed the disc herniations were progressively worsening, that she had a 25% whole body impairment, nor that she needed any future medical care, and especially not spinal surgery. We agree with the dissent that the rules do not require disclosure of "each and every opinion" held by an expert, but we disagree with the dissent's apparent conclusion that the "general substance" requirement of Rule 195.5(a)(3) is so lax that a trial court must allow a treating physician to opine that an accident caused a party to sustain a permanent injury that will likely require spinal surgery when neither the medical records nor the sponsoring party's disclosures indicate the physician held any such opinions.

21

This is precisely the type of ambush our expert disclosure rules were meant to prevent.

We also disagree with the dissent's assertion that Standley's objections to Dr. Smith's testimony were untimely because they were lodged for the first time during trial. Although the DCO required "[a]ll challenges to expert witnesses" to be set for hearing at least 75 days before trial, the DCO goes on to specify that objections based on Rule 702 are otherwise waived. Standley's objections to Dr. Smith's testimony were based not on Rule 702, but on Rules 195.5(a)(3) and 193.6. Nothing in the DCO required Standley to anticipate prior to the 75-day deadline that Dr. Smith would, at some point after the deadline (either during deposition or at trial), offer opinions that had not been properly disclosed. Nor did either party agree – simply by agreeing to take Dr. Smith's deposition outside the discovery period – that everything Dr. Smith might say during the deposition would be admissible at trial. We conclude Standley timely objected at trial that the opinions expressed by Dr. Smith during his deposition improperly exceeded the scope of what had been disclosed in Fults's expert witness designations.

Based on the record before us, the trial court was within its discretion to conclude that Fults neither adequately disclosed nor produced documents reflecting Dr. Smith's mental impressions and the factual basis supporting them as required by Rule 195.5(a)(3), and that Fults failed to negate unfair surprise or prejudice as

required by Rule 193.6. The trial court did not act without reference to guiding rules or principles; it applied the Rules of Civil Procedure consistent with their "salutary purpose" of "requir[ing] complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush." *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992). Because the record does not demonstrate an abuse of discretion, we overrule Fults's first issue challenging the trial court's exclusion of Dr. Smith's testimony.

In her second issue, Fults complains that the trial court excluded Dr. Smith's testimony on the basis the certification of his deposition was not on file at the time of trial. Although the trial court originally cited the absence of a certification as an additional basis for its decision, the record reflects the trial court later received verification that the certification had been filed. Because the trial court's ruling ultimately was not premised on any lack of certification, and because Fults's noncompliance with Rule 195.5(a)(3) serves as an independent basis for the exclusion of Dr. Smith's testimony under Rule 193.6(a), we need not reach Fults's second issue.

In her third issue, Fults complains that the trial court excluded her medical records. During trial, Fults offered several exhibits consisting of medical records from various providers. Standley objected to each on the basis that although Fults filed a Notice of Filing Affidavits, the records were not attached and had not been

23

produced. When Fults's counsel claimed the records had been produced, the following colloquy took place:

> [STANDLEY'S COUNSEL]: If he has got it, he should show me.
>
> THE COURT: Indeed.
>
> [STANDLEY'S COUNSEL]: I would hate to lie to the Judge but the one that I have got shows that they were not attached.
>
> [FULTS'S COUNSEL]: Not true, Your Honor.
>
> THE COURT: Well, you are telling me not true; and you are telling me it is true. Do you have them?
>
> [FULTS'S COUNSEL]: I have the records here, Your Honor. They have all been produced. These are exhibits now.
>
> THE COURT: Okay. When you produced the affidavits, were the records attached or were they not?
>
> [FULTS'S COUNSEL]: I believe they were. The notice of filing didn't attach them with the Court; but I believe when he got them, they were all attached.
>
> THE COURT: You believe that?
>
> [FULTS'S COUNSEL]: Yes, absolutely, I believe that.
>
> THE COURT: The objection is sustained.

"We review a trial court's exclusion of evidence for an abuse of discretion." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015). To the extent the trial court implicitly found the records were not timely produced, we must defer to the trial court's discretion to make such a determination because the record contains

24

some evidence to support it. *See Jackson*, 675 S.W.3d at 6. Because Fults has not established the trial court abused its discretion, we overrule Fults's third issue.

In her fourth issue, Fults complains that the trial court excluded her medical bills. "A plaintiff has the burden to prove the amount of medical expenses the plaintiff incurred and to establish that the expenses were reasonable and necessary for the injuries plaintiff sustained." *Jefferson Cnty. v. Akins*, 487 S.W.3d 216, 232 (Tex. App.—Beaumont 2016, pet. denied). A plaintiff may meet this burden either through expert testimony or through the use of billing affidavits served in compliance with Chapter 18 of the Texas Civil Practices and Remedies Code. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b). "Mere proof of the amounts charged or paid is not proof of reasonableness, and the recovery of medical expenses will be denied in the absence of showing the charges were reasonable and necessary." *Jefferson Cnty.*, 487 S.W.3d at 232.

During trial, Fults offered several exhibits consisting of medical bills from various providers. No expert testimony was presented regarding reasonableness and necessity. Standley objected to each of the bills on the basis that Fults's Notice of Filing Affidavits was untimely under section 18.001. According to section 18.001(d), a party seeking to use an affidavit to establish that services were necessary and that the charges for such services were reasonable must serve the other party with a copy of the affidavit by the earliest of:

(1) 90 days after the date the defendant files an answer;

(2) the date the offering party must designate any expert witness under a court order; or

(3) the date the offering party must designate any expert witness as required by the Texas Rules of Civil Procedure.

Tex. Civ. Prac. & Rem. Code Ann. § 18.001(d). Here, the earliest such date was June 4, 2021, when Fults's expert designations were due pursuant to the trial court's Docket Control Order. Because Fults's Notice of Filing Affidavits was not filed until August 3, 2021, it was untimely, and because there was no other method by which Fults sought to establish the necessity of the treatment and the reasonableness of the charges, the trial court did not abuse its discretion by sustaining Standley's objections and excluding the medical bills. We overrule Fults's fourth issue.

In her fifth and sixth issues, Fults complains that the trial court refused to submit jury questions regarding damages for future physical pain and mental anguish and for future impairment. Texas Rule of Civil Procedure 278 requires a trial court to submit questions "which are raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. "This rule provides a substantive, non-discretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them." *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

"[A]t trial the plaintiff must establish two causal nexuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued

26

upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). In the absence of expert testimony establishing a causal link between a motor vehicle collision and a complained-of medical condition, a plaintiff may still establish causation with

> evidence "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" [which] could suffice to support a causation finding between the automobile accident and basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents.

*Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007) (quoting *Morgan*, 675 S.W.2d at 733). Although expert testimony may not have been required to establish a causal link between the motor vehicle collision and Fults's initial complaints of neck pain for which she was seen and treated for approximately one month ending in June 2019, it had been almost three years since the collision by the time this case went to trial in February 2022. In the absence of expert testimony establishing a causal link between the collision and any medical condition which could cause physical pain, mental anguish or impairment from the time of trial into the future, there is no evidence in the record to support the submission of jury questions on future damages. Because the trial court did not err in refusing to submit future damages, we overrule Fults's fifth and sixth issues.

Finally, the dissent argues that the trial court abused its discretion by refusing to grant a continuance and a new DCO, and that we should address this issue even though it was not raised in the briefing. As indicated above, the parties filed an agreed motion seeking a 90-day continuance from a November 2021 trial setting, but the motion does not indicate any matters that "changed materially after the discovery cutoff" which would justify allowing additional time for discovery under Rule 190.5(b). *See* Tex. R. Civ. P. 190.5(b). According to the order, the trial court concluded there had been adequate time for discovery because the case had already proceeded to trial once, during which it was nonsuited and refiled. Moreover, although the motion was denied, the case was not reached for trial in November, and it was reset in February 2022, resulting in the 90-day reprieve sought by the parties. When the case was called for trial in February 2022, neither side asked for a continuance nor a new DCO.

Fults does not complain on appeal that the trial court did not grant a continuance or new DCO, but even if we were to construe her brief as including such a complaint as a subsidiary issue fairly included within one or more of the issues she raises in her brief, such a complaint was not preserved for our review. *See* Tex. R. App. P. 33.1, 38.1(f). Briefing and preservation rules aside, the record does not support the dissent's conclusion that the trial court abused its discretion. When the trial court denied a continuance and new DCO in the fall of 2021, there had been no

28

showing of any due diligence that would justify a continuance, nor a material change in circumstances that would justify a new DCO. And once it became apparent during trial in February 2022 that additional medical information had been developed after the discovery deadline, neither side asked for a continuance or a new DCO. It would be a strange doctrine indeed to hold that a trial court abuses its discretion when it does not grant relief which has not been requested.

## Conclusion

Having overruled all of Fults's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on May 5, 2023
Opinion Delivered July 31, 2025

Before Golemon, C.J., Wright and Chambers, JJ.

29

# DISSENTING OPINION

"Texas law greatly favors resolving litigation on the merits rather than on procedural technicalities." *See Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022) (stating same in context of a misfiled motion for new trial). I respectfully dissent, because I believe the trial court abused its discretion with its evidentiary rulings, which amounted to a discovery sanction that prevented Fults from presenting the merits of her case during trial.

In addition, the majority determines that certain instances of the trial court's abuse of discretion should not be addressed, as they were not specifically raised. Yet we are to liberally construe the parties' briefs and address all subsidiary issues fairly encompassed, and here, the exclusion of Fults's evidence was tied to the trial court's enforcement of her DCO, refusal to continue the case, and erroneous interpretation of the discovery rules. *See* Tex. R. App. P. 38.1; *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 826 (Tex. 2022). I reach these conclusions for the reasons more fully discussed below.

## SUPPLEMENTAL BACKGROUND

The following background information is included as a supplement to the majority's Background to further clarify facts supporting this Dissent.

Fults and Standley were involved in a two-vehicle accident. Standley was cited for driving while intoxicated and failure to stop and render aid. Pursuant to a

1

plea agreement, Standley pleaded guilty to being involved in an accident involving personal injury or death. *See* Tex. Transp. Code Ann. § 550.021(a), (c).

The trial court's DCO required Fults, the party seeking affirmative relief, to designate her expert witnesses 150 days before the assigned trial date of November 1, 2021. Although the trial ultimately did not begin until February 14, 2022, the DCO also provided that continuances would not alter the discovery deadlines contained in the DCO. Under the DCO, Fults's expert designation deadline fell on June 4, 2021, which was 150 days before the DCO's trial setting of November 1, 2021. Fults filed her expert disclosures on that date, but the trial court ruled that Fults's one-size-fits-all expert designations did not satisfy either the applicable Rule or the DCO because she listed topics of testimony, but not each expert's specific opinions.

The parties *agreed* to depose Dr. Smith after the discovery deadline but before trial. During that deposition, the parties learned of new medical information including a recent MRI and Fults's potential future need for surgery. Standley's counsel willingly disregarded the DCO deadlines as they applied to his need for discovery, then complained that he was prejudiced by this newly discovered information. During trial and for the first time, Standley's counsel objected to Fults's expert designation as inadequate, although the deadline to object to experts under the DCO had already passed. The trial court allowed Standley to lodge this untimely objection and struck Dr. Smith's testimony in its entirety.

2

As evidence of her damages during trial, Fults offered the deposition of Dr. Smith as her treating doctor and various medical treatment and billing records. When the trial court excluded all this evidence, Fults made an offer of proof, which included not only Dr. Smith's deposition but Fults's medical and billing records. These records reflect the $28,385.75 total charge for Fults's medical treatment as well as information regarding Fults's symptoms, alleged injuries, and treatment. They also include Dr. Smith's opinion that the automobile accident caused Fults's disc herniations, which Dr. Smith considered permanent and progressive. Given the evidentiary rulings excluding all this evidence, the exhibits and testimony submitted to the jury contained no evidence of Fults's medical treatment, its relationship to the accident, the costs of such treatment, or her future pain, impairment, or mental anguish.

**Dr. Steven Smith:**

During the trial, when Fults attempted to have Dr. Smith testify to his opinions by deposition, Standley objected for the very first time to this evidence. When discussing Dr. Smith's deposition and Standley's objections to it outside of the jury's presence, the trial court noted that its DCO required "disclosure of opinions[,]" and Texas Rule of Civil Procedure 195.5(a)(3) "requires disclosure of [an expert's] opinions and a summary of the basis for them." The trial court further characterized Fults's expert designations as "boilerplate[,]" observing that Fults used identical

3

language to designate each expert. The trial court's DCO warned, "Experts not listed in compliance with this paragraph will not be permitted to testify absent a showing of an exception under Rule 193.6." The DCO did not differentiate between retained and non-retained treating experts. *See* Tex. R. Civ. P. 193.6 (providing for exclusion of evidence if a party fails to timely disclose, amend, or supplement discovery responses unless the court finds there was good cause for the failure and the failure will not unfairly surprise or prejudice the other party), 194 (differentiating disclosure of information for testifying experts). In deciding to exclude Dr. Smith's testimony, the trial court considered Fults's expert disclosure insufficient under Rule 195.5(a)(3) and insufficient under the court's DCO. *See id.* 195.5 (a)(3) (for non-retained testifying experts, requiring parties to provide "documents reflecting" "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them"). More specifically, the trial court observed that Fults's expert disclosure did not list each and every opinion of Dr. Smith as compared to his deposition testimony: that the accident had caused Fults to sustain disc herniations at the C5-6 and C6-7 spinal levels; that the herniations had worsened; that the herniations were permanent and would continue to worsen; that Fults likely would need spinal fusion surgery in the future; or the degree of future impairment that these injuries would cause.

4

By doing so, the trial court imposed an expert designation requirement that unnecessarily required Fults to marshal all her expert evidence, which the rules do not require. *See Nat'l Fam. Care Life Ins. v. Fletcher*, 57 S.W.3d 662, 667–71 (Tex. App.—Beaumont 2001, pet. denied) (discussing Texas Rule of Civil Procedure 194.2(c) and concluding that the trial court impermissibly limited cross-examination based on "an overly restrictive interpretation of appellants' response to the request for disclosure[]"). In addition, the trial court ignored that portion of Rule 195.5(a)(3) where only "the general substance" of the testimony is required. *See* Tex. R. Civ. P. 195.5(a)(3). More importantly, the trial court disregarded that portion of Rule 195.5(a)(3) pertaining to non-retained experts such as Dr. Smith, and providing that this information can be supplied by the production of documents reflecting same.

In fact, Fults set forth in her disclosures that:

> *The mental impressions, opinions, records and reports of these medical experts are contained within each medical expert's medical records of Plaintiff. The records have been reduced to writing and are on file with this Court or will be filed with this Court.* Any records reviewed by the medical experts are listed and/or otherwise noted in each expert's records. To the extent, if any, that such medical records do not contain an opinion about the causation of Plaintiff's injuries, these healthcare providers will testify that in their opinion, the collision made the basis of this lawsuit caused the medical conditions for which they treated the Plaintiff and/or aggravated any pre-existing condition(s) to the point that said pre-existing condition(s) became symptomatic when they were asymptomatic before the collision, or became more symptomatic than they were before the collision. Further, these healthcare providers will testify that the collision made their treatment of Plaintiff necessary and that their charges for their treatment of Plaintiff were usual and customary where the services were provided.

The opinions and testimony of these medical experts shall be based on their examination and treatment of Plaintiff, as well as on the medical records of Plaintiff which have been produced in this case.

These experts may also offer testimony as to the medical and billing records of Plaintiff. The mental impressions and opinions of the experts are contained within the billing, medical and other types of records relevant to the incident made the basis of this lawsuit, as well as the reasonableness and necessity of those same medical expenses. *The records have been reduced to writing and are on file with his Court or will be filed with this Court. They have been produced to counsel for Defendant.*

(Emphasis added.)

We previously discussed these rules in *McGhee v. Novoterra Chase, LLC*, No. 09-22-00167-CV, 2024 WL 2758702, at **12–20 (Tex. App.—Beaumont May 30, 2024, pet. denied) (mem. op.). In *McGhee*, the trial court excluded the prevailing party's evidence of attorney's fees, erroneously believing that the party's expert disclosures were inadequate. *See id.* at *15. We reversed the trial court's judgment, holding that the trial court abused its discretion by requiring the party to provide his attorney's opinion of a reasonable total fee, and noted that "[t]he trial court seemingly conflated the adequacy of a disclosure with the sufficiency of the evidence to support an award . . ." *Id.*

Like in *McGhee*, Fults disclosed her experts' opinions and stated that the treating physicians based their opinions "on their examination and treatment of Plaintiff, as well as on the medical records of Plaintiff which have been produced in

6

this case." Here, the trial court once again seemingly conflated the adequacy of a disclosure with the sufficiency of the evidence to support a verdict at trial.

**Exclusion of Fults's Medical and Billing Records:**

When Fults offered her health care providers' medical and billing records during trial, Standley objected for the very first time to this evidence. Although Standley did not urge identical objections to each exhibit, his objections fell into three categories: (1) that these exhibits were allegedly untimely under Texas Rule of Evidence 902(10)(A), Texas Civil Practice and Remedies Code section 18.001(c)(3), and the DCO; (2) that the records, themselves, were allegedly not attached to the affidavits as required or that the records were served without the affidavits attached; and (3) that documents were allegedly filed in the incorrect cause number, which applied to Fults's previous lawsuit against Standley, and therefore "have not been produced in this case."

The trial court excluded Fults's medical records from evidence because, although the affidavits were served on the defendant, the trial court concluded that the records were not properly served on Standley as required by Texas Rule of Evidence 902(10)(A). *See* Tex. R. Evid. 902(10)(A) (requiring copies or originals of business records accompanied by the requisite affidavit to be served "at least 14 days before trial"). The trial court also excluded Fults's billing records because the billing records affidavits were not served on Standley by the deadline set forth in Texas

7

Civil Practice and Remedies Code section 18.001. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (outlining requirements and deadlines for affidavits concerning cost and necessity of services). In addition, as discussed above, the trial court excluded all evidence from the doctor's deposition on the ground that Fults did not disclose the substance of his opinions in conformity with the court's docket control order and Rule 195.5(a)(3).

This meant the trial court excluded *all* Fults's medical and billing evidence, including Dr. Smith's deposition in its entirety. The trial court did so even though Standley had some medical and billing records that were filed inadvertently under the wrong cause number from the earlier lawsuit, which Standley's attorney acknowledged having received. Therefore, Standley was not surprised or prejudiced by Dr. Smith's testimony covering this previously produced evidence. *See* Tex. R. Civ. P. 193.6(a)(2). He certainly was not "unfairly" surprised, given his agreement to depose the doctor after the discovery cutoff. *See id.*; *see also Mitschke*, 645 S.W.3d at 263.

Here, the excluded evidence previously produced to Standley in the original cause number prevented Fults from establishing causation and damages. The record shows that Standley had the first set of records, Dr. Smith had been timely designated as a non-retained expert, and Standley did not depose him until after the close of discovery and thirteen days before trial by agreement. Nothing in the record suggests

8

that the misfiling of the medical and billing records in the original cause number was done from trickery or to mislead anyone, and Standley presented no argument about how Fults's filing the records in the original docket number could have prejudiced Standley. *See Mitschke*, 645 S.W.3d at 263 (discussing misfiled motion in an original docket number and noting that "[n]othing suggests that the misfiling was done from trickery or to mislead anyone"). "It seems implausible that prejudice was even possible under these facts." *Id.*

**DCO Challenging Experts Requirement:**

The trial court's DCO required any party challenging an expert witness to set a hearing on the challenge 75 days before the trial date. The DCO further provided that "*[a]ll challenges* to expert witnesses must be set for a hearing to occur by this date. Failure to obtain such a hearing is a waiver of any Rule 702 objection." (Emphasis added.) Despite Standley's counsel, upon receipt of Fults's disclosures, being aware that they were objectionable as insufficient, he did not object to or challenge Fults's expert disclosures, including that of Dr. Smith, by the 75-day deadline. Moreover, Standley's counsel knew he would object to Fults's medical and billing evidence as untimely or insufficient upon his receipt of same, but Standley did not object to or challenge same by the 75-day deadline. Instead, Standley's counsel waited to raise these objections for the very first time during trial, which amounted to trial by ambush. The trial court applied an overly restrictive view of the

9

DCO and discovery rules against Fults, but more importantly failed to enforce its DCO deadlines against Standley for "*all challenges*" to expert witnesses and therefore acted arbitrarily and unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (noting that a trial court abuses its discretion if acting arbitrarily or unreasonably or without reference to guiding rules and principles); *Farrell v. Regent Care Ctr. of the Woodlands, LP*, No. 09-15-00230-CV, 2016 WL 7478395, at *6 (Tex. App.—Beaumont Dec. 29, 2016, no pet.) (mem. op.) (citation omitted) (stating same). Strictly holding one party to DCO deadlines but not the other is by its very nature arbitrary and unreasonable, and amounts to an abuse of discretion. *See Downer*, 701 S.W.2d at 241–42. Thus, the trial court abused its discretion. *See id.*; *Farrell*, 2016 WL 7478395, at *6 (citation omitted).

**Rule 193.6(a) Exceptions and Discovery Rulings as Sanctions:**

The Rule 193.6(a) exceptions depend on the trial court finding that "(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties." Tex. R. Civ. P. 193.6(a)(1), (2); *see Fowler v. Samuel*, No. 09-08-00348-CV, 2009 WL 5710146, at *5 (Tex. App.—Beaumont Feb. 4, 2010, no pet.) (mem. op.) (discussing exceptions under Tex. R. Civ. P. 193.6(a)); *see also L&S Pro-Line v. Gagliano*, No.

09-21-00178-CV, 2024 WL 3218507, at **23–26 (Tex. App.—Beaumont June 28, 2024, pet. filed) (mem. op.).

The trial court determined that Fults had not met her burden to establish good cause or the lack of unfair surprise or prejudice under the DCO and applicable rules to call Dr. Smith as her non-retained testifying expert. *See* Tex. R. Civ. P. 193.6(a), (b). Standley agreed to Smith's deposition being taken after the expiration of the discovery deadline, and Standley's attorney fully cross-examined Dr. Smith during the deposition. Fults sufficiently established there was good cause to allow Smith's deposition to be read to the jury, as well as no unfair surprise or prejudice to Standley. As more fully discussed above, Fults met her burden to establish good cause or the lack of unfair surprise or prejudice to introduce Dr. Smith's deposition testimony as a non-retained testifying expert. *See id.* 193.6(a)(1), (2).

Like discovery sanctions, we review a trial court's evidentiary rulings for an abuse of discretion. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *See Pipkins v. LaBiche Architectural Grp., Inc.*, 661 S.W.3d 842, 848 (Tex. App.—Beaumont 2022, pet. denied) (citation omitted); *see also Downer*, 701 S.W.2d at 241–42.

Trial courts have wide discretion in using discovery sanctions to ensure compliance with the discovery rules, to punish violators, and to deter would-be

11

violators. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849–50 (Tex. 1992) (orig. proceeding). That said, a trial court's discretion is not unlimited, and discovery sanctions must be just. *See TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991) (orig. proceeding). "Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Id.* at 918 (citing *Ins. Corp. of Ireland v. Compaigne des Bauxites de Guinee*, 456 U.S. 694, 705–06 (1982)). Sanctions which prevent a decision on the merits "cannot be justified 'absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.'" *Chrysler Corp.*, 841 S.W.2d at 849 (quoting *TransAmerican*, 811 S.W.2d at 918).

Here, the excluded evidence previously produced to Standley prevented Fults from establishing causation and damages, yet the record does not support that she or her attorney acted in flagrant bad faith or with callous disregard for the rules. *See id.* Rather, the record shows that Standley had the first set of records, Dr. Smith had been timely designated as a non-retained expert, and Standley did not depose him until after the close of discovery. Absent evidence of flagrant bad faith or callous disregard, the sanction of excluding this evidence was unjust. *See id.*

The Texas Supreme Court has explained that "'[c]ase determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly

12

justified, and it is fully apparent that no lesser sanctions would promote compliance with the rules.'" *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (quoting *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993)). The record likewise does not show that the lesser sanction of only excluding Dr. Smith's deposition testimony regarding the new MRI and future surgery, which the parties first learned about during the doctor's deposition, would not have promoted compliance. *See id.* In fact, Fults's attorney was agreeable to the exclusion of the newly discovered evidence that the parties only learned about during the doctor's deposition. Rather, the trial court excluded all Dr. Smith's testimony, despite the parties agreeing to this deposition after the discovery deadline and his testimony covering medical records Standley already had in his possession.

**The Trial Court's Refusal To Extend The DCO Deadlines:**

The trial court's refusal to extend the DCO deadlines in essence required Fults to produce all evidence in June for a trial that occurred in February the following year, although Fults's treatment was ongoing.

In addition, the trial court took the position that her DCO controlled her exclusion of Fults's expert testimony because the trial court's DCO required that **"UNLESS OTHERWISE ORDERED BY THE COURT, THE FOREGOING DATES AS CALCULATED FROM THE TRIAL DATE STATED HEREIN REMAIN THE APPLICABLE DEADLINES FOR THIS CASE EVEN IF THE**

13

**TRIAL DATE IS RESET AND REGARDLESS OF THE REASON FOR ANY RESET."** The DCO set the original trial date for November 1, 2021, with the discovery deadline 90 days before trial or August 1, 2021. "PLAINTIFF'S NOTICE OF FILING AFFIDAVITS PURSUANT RULE 902(10) OF THE TEXAS RULES OF EVIDENCE AND §18.001 ET SEQ. OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE" were filed two days late on August 3, 2021. More importantly, the parties filed an Agreed First Motion for Continuance on September 20, 2021, requesting additional time to conduct discovery, which the trial court denied on September 22, 2021. However, based upon filings, the trial court was aware that the parties were seeking additional discovery. "All Parties' Joint Status Notice To The Court" was filed on October 18, 2021, where Standley's attorney announced not ready for trial and additional discovery was necessary. In fact, Dr. Smith's deposition was not taken until February 1, 2022, which was thirteen days prior to the trial commencing on February 14, 2022.

In addition to the lack of unfair surprise or prejudice to Standley, I observe that the trial court did not enter a new DCO adopting new discovery deadlines. Rule 190.5 addresses a new discovery control plan, stating:

> The court may modify a discovery control plan at any time and must do so when the interest of justice requires. Unless a suit is governed by the expedited actions process in Rule 169, the court must allow additional discovery:

14

(a) related to new, amended or supplemental pleadings, or new information disclosed in a discovery response or in an amended or supplemental response, if:

> (1) the pleadings or responses were made after the deadline for completion of discovery or so nearly before that deadline that an adverse party does not have an adequate opportunity to conduct discovery related to the new matters, and

> (2) the adverse party would be unfairly prejudiced without such additional discovery;

(b) regarding matters that have changed materially after the discovery cutoff if trial is set or postponed so that the trial date is more than three months after the discovery period ends.

Tex. R. Civ. P. 190.5; *see also In re Lund Ventures, LLC*, No. 09-24-00242-CV, 2024 WL 4718916, at *3 (Tex. App.—Beaumont Nov. 7, 2024, orig. proceeding) (mem. op.).

When the trial court reset the trial date from November 1, 2021 to February 14, 2022, the new trial date was more than three months after the discovery period ended on August 3, 2021. If matters "changed materially" after August 3, then Rule 190.5 required the court to amend its DCO. *See* Tex. R. Civ. P. 190.5(b). Indeed, Standley also wanted to continue the case, citing the need for additional discovery and depositions. Both parties represented in their Agreed Motion for Continuance filed on September 20, 2021, after the discovery deadline had passed,

> The parties need additional time to conduct discovery, including the discovery of third-party witnesses who are not under the control of either the Plaintiff or Defendant, and whose depositions have been

15

difficult to schedule. Because much of the case depends upon their testimony, not only is the continuance needed, but the administration of this litigation is necessarily delayed as a result.

Fults's counsel advised the Court that they deposed Dr. Smith because he had a medical condition that required surgery. The deposition of Nicholas Phillips, the responding officer, appears to have been particularly difficult to schedule, as shown by its having been scheduled for September 16, 2021, rescheduled for November 3, 2021, and eventually completed on February 9, 2022, five days before the trial began. The trial court knew of these scheduling problems because Standley's counsel filed motions to quash regarding the September and November dates, stating that Fults selected these dates without his or his client's agreement. These discovery difficulties arose after August 3, 2021, and "materially changed" witness availability to the degree that Rule 190.5(b) required the trial court to amend the DCO accordingly and adopt a more workable timetable tailored to the circumstances of the case. *See id.* 190.4(a), 190.5(b).

Furthermore, the language in the trial court's DCO that it will not amend deadlines even if a continuance is granted or regardless of whether discovery is incomplete is problematic. A trial "court may modify a discovery control plan at any time and must do so when the interest of justice requires." *Id.* 190.5; *see Lund Ventures*, 2024 WL 4718916, at *3. "The court must allow additional discovery if . . . new information is disclosed in a manner that the party lacks an adequate

16

opportunity to conduct discovery related to the new matters and the adverse party would be prejudiced without such additional discovery." *See Lund Ventures*, 2024 WL 4718916, at *3 (citing Tex. R. Civ. P. 190.5(a)). Although originally set for trial on November 1, 2021, the case did not proceed to trial until February 14, 2022, placing the close of discovery more than 90 days from the new trial date. *See id.*; *see also* Tex. R. Civ. P. 190.5(b) (the trial court must allow discovery "regarding matters that have changed materially after the discovery cutoff if trial is set or postponed so that the trial date is more than three months after the discovery period ends"). The trial court's DCO language refusing to amend deadlines makes Rule 190.5(b)'s requirement of an adjustment if there has been a material and substantial change meaningless and contrary to the law.

Since a strict application of the section 18.001(d) deadlines required Fults to serve her medical billing affidavits on Standley by May 5, 2021, the date that was ninety days before the discovery period ended on August 3, 2021, less than two weeks after Standley filed his answer, and since the above-described difficulties with witness availability caused unforeseen discovery problems, "the interest of justice" required the trial court to alter its DCO to reflect deadlines consistent with the new trial date of February 14, 2022. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(d)(3) (stating the deadline to serve medical billing affidavits); Tex. R. Civ. P. 195.2(a) (requiring parties seeking affirmative relief to designate experts by

17

ninety days before the end of the discovery period) *Id.* 190.5 (requiring a court to revise a discovery control plan "when the interest of justice requires").

The trial court denied both parties' agreed motion for continuance and placed the close of discovery more than 90 days before the new trial date. Fults claimed to require treatment for her injuries through the time of trial and beyond. Given that the case involved ongoing treatment and claims of injuries present and future, it was unreasonable for the trial court to arbitrarily cut off discovery at 90 days before the previous trial setting. *See Lund Ventures*, 2024 WL 4718916, at *3 (noting same in context of Rule 204 motion). Matters changed materially after the discovery cutoff as evidenced by the parties' continued attempts to obtain additional discovery after the close of discovery under the trial court's DCO. *See id.*; *see also* Tex. R. Civ. P. 190.5(b). In my opinion the trial court abused its discretion by denying the parties' agreed motion for continuance. More importantly, the undisputed facts compel me to conclude that Fults met her burden to establish good cause or the lack of unfair surprise or prejudice to call Dr. Smith as her non-retained testifying expert. *See* Tex. R. Civ. P. 193.6(a)(1) & (2).

## CONCLUSION

As explained above, the trial court acted arbitrarily or without reference to guiding rules or principles, and thus abused its discretion in excluding Dr. Smith's deposition testimony in its entirety, and in excluding the medical and billing records

18

from being presented to the jury at trial. *See Downer*, 701 S.W.2d at 241–42; *Farrell*, 2016 WL 7478395, at *6 (citation omitted). For the reasons discussed above, this error was harmful. *See* Tex. R. App. P. 44.1(a)(1). Therefore, I respectfully dissent.

W. SCOTT GOLEMON
Chief Justice

Dissent Delivered
July 31, 2025